**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **LEONARD SINGER,** | ) | |
| No. 224775, | ) | |
| | ) | |
| Plaintiff, | ) | **Case No. 3:16-cv-02621** |
| | ) | **JUDGE CRENSHAW** |
| v. | ) | |
| | ) | |
| **AARON PRICE,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**M E M O R A N D U M**

Plaintiff, an inmate of the Rutherford County Adult Detention Center in Murfreesboro, Tennessee, brings this *pro se, in forma pauperis* action under 42 U.S.C. § 1983 against fourteen named Defendants as well as John and Jane Does, alleging violations of his federal civil rights. (Doc. No. 1).

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

**I.      PLRA Screening Standard**

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed *in forma pauperis* that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief.  Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," id. § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). Id. § 1915A(b).

1

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." Tackett v. M & G Polymers, USA, LLC, 561F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up [unpleaded] allegations." McDonald v. Hall, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## II.     Section 1983 Standard

Plaintiff brings his federal claims pursuant to 42 U.S.C. § 1983.   Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ."   To state a claim under § 1983, a plaintiff must allege and show two elements:  (1) that he was deprived of a right secured by the

2

Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003); 42 U.S.C. § 1983.

## III.    Alleged Facts

The *pro se* complaint consists of 163 handwritten pages and 44 pages of attachments. The Court will recount only the general allegations pertinent to the Court's required PLRA screening.

The complaint alleges that, on October 27, 2015, Defendant Murfreesboro Police Department Officers Price, Gibbs, and Gorham conducted an unlawful traffic stop of Plaintiff during which Price used excessive force against Plaintiff, "strangulating [sic] Singer by applying a carotid-artery or bare arm hold against Singers [sic] throat impeding normal breathing and circulation of air and blood flow." (Doc. No. 1 at pp. 40-41). According to the complaint, Price believed that Plaintiff had swallowed a marijuana joint as Price approached Plaintiff's car during the traffic stop. When Plaintiff told Price that he could not breath, Price allegedly told Plaintiff to "spit it out" and maintained pressure to Plaintiff's throat. (Id.) Price continued the application of force until Plaintiff became unconscious and hit his head on the door frame and floor board of his vehicle, sustaining injuries for which he was taken the hospital by Price. (Id. at p. 42). When Plaintiff regained consciousness, he spit out medical gauze and plastic from an earlier dental procedure. (Id.) According to the complaint, on the way to the hospital and at the hospital, Officer Gibbs threatened the Plaintiff in an attempt to coerce a confession from him, such as telling the Plaintiff that his stomach would be pumped if he did not confess. (Id. at pp. 44-46).

Next, the complaint alleges that Plaintiff was not provided with effective representation by his public defender Ray White during his preliminary hearing. The complaint further alleges that various state procedures and safeguards were not followed during his preliminary hearing, including

that Plaintiff's indictment was improperly altered or falsified by a number of Defendants. The complaint also alleges that Plaintiff was not provided with effective representation by his second public defender, Billie Zimmerman, during Plaintiff's suppression hearing.

Additionally, the complaint alleges that Circuit Court Judge David M. Braggs and General Sessions Judge Rhonda Campbell acted outside of their jurisdiction and abused their discretion throughout the Plaintiff's state proceedings to date. The complaint alleges that Defendants Aneta Flaggs, both judges, the state prosecutors, the public defenders, and other Murfreesboro police officers were engaged in a civil conspiracy to wrongly incarcerate the Plaintiff. The complaint finally alleges that the Rutherford County Adult Detention Center library is constitutionally inadequate, depriving the Plaintiff of access to the courts.

## IV. Analysis

### A. False arrest and false imprisonment claims

False arrest claims can be brought pursuant to federal or state law. Voyticky v. Village of Timberlake, Ohio, 412 F.3d 669, 677 (6th Cir. 2005). "A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." Id. When a plaintiff is arrested pursuant to a warrant, the plaintiff must show "that in order to procure the warrant, [the officer] knowingly and deliberately, or with reckless disregard for the truth, made false statements or omissions that created a falsehood and such statements or omissions were material, or necessary, to the finding of probable cause." Sykes v. Anderson, 625 F.3d 294, 305 (6th Cir. 2010) (citations omitted)).

Claims of false arrest and false imprisonment under federal law are typically analyzed in identical fashion. See Wallace v. Kato, 549 U.S. 384, 388, 127 S. Ct. 1091, 166 L.Ed.2d 973

(2016)("False arrest and false imprisonment overlap; the former is a species of the latter."); Gumble v. Waterford Township, 171 Fed. App'x 502, 507 (6th Cir. 2006)(false arrest and false imprisonment claims are functionally the same and the court applies the same analysis to both claims). A facially valid warrant is not always sufficient to merit dismissal of a false arrest/false imprisonment claim brought pursuant to § 1983 when evidence exists that a defendant intentionally misled or intentionally omitted information at a probable cause hearing for an arrest or search warrant if the misleading or omitted information is critical to the finding of probable cause. See Mays v. City of Deyton, 134 F.3d 809, 816 (6th Cir. 1998); United States v. Atkin, 107 F.3d 1213, 1217 (6th Cir. 1997).

Here, the complaint alleges that, at or near the time of the Plaintiff's traffic stop, Plaintiff spoke with officers Price, Gibbs, and Gorham and explained his version of the events, and the officers thereafter knowingly arrested Plaintiff without probable cause. Further, Plaintiff alleges these officers subsequently provided false information in court regarding the incident. The Court therefore finds, for purposes of the initial review, that Plaintiff has stated colorable claims under § 1983 against Defendants Price, Gibbs, and Gorham in their individual capacities. The Court cautions that these are preliminary findings only. The Plaintiff's allegations may also state federal due process claims with regard to these Defendants, but the Court will leave these potential claims for the Magistrate Judge to sort out after the Defendants respond to the complaint.

**B.      Excessive force claims**

The complaint alleges that Defendant Price used excessive force when arresting the Plaintiff on October 27, 2015, resulting in injuries to Plaintiff that required treatment at a hospital. (Doc. No. 1 at pp. 40-42). The complaint further alleges that, after the Plaintiff's arrest, on the way to the

hospital and at the hospital, Defendant Gibbs threatened to order the doctors to pump the Plaintiff's stomach in an attempt to coerce a confession from him. (Id. at pp. 43-44).

It appears that the Plaintiff was a pre-trial detainee, not a convicted prisoner, at the time of the alleged use of excessive force. The legal status of an alleged victim of excessive force is significant because the conduct of the offending officer must be analyzed under the standard appropriate to the applicable constitutional provision. See Coley v. Lucas County, Ohio, ___ F.3d ___, ___, 2015 WL 4978463, at *4 (6th Cir. 2015). The Supreme Court has recently clarified that when assessing pretrial detainees' excessive force claims we must inquire into whether the plaintiff shows "that the force purposefully or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, ___ U.S. ___, 135 S. Ct. 2466, 2473 (2015)). The inquiry is highly fact-dependent, and must take into account the "perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. It should also account for "the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,'" id., and defer when appropriate to "'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" Id. (quoting Bell v. Wolfish, 441 U.S. 520, 540 (1979)). The Court further instructs:

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id. This list is not exclusive. Kingsley also reaffirms that pretrial detainees cannot be subjected to

"the use of excessive force that amounts to punishment," id. (quoting Graham, 490 U.S. at 395 n. 10, 109 S. Ct. 1865) precisely because they "cannot be punished at all," id. at 2475.

In light of this Fourteenth Amendment standard and the allegations of the complaint, the Court finds that the complaint states a colorable excessive force claim against Defendant Price in his individual capacity under § 1983. Although it is unclear whether the Plaintiff will ultimately prevail on this claim, the allegations of the complaint survive the required PLRA's screening and warrant further factual development. However, the allegations pertaining to threats made by Defendant Gibbs do not rise to the level of excessive force, and the Plaintiff's excessive force claim against Defendant Gibbs will be dismissed.

### C. Denial of access to the courts

The law is well settled that a prisoner has a First Amendment right of access to the courts. Bounds v. Smith, 430 U.S. 817, 821-823 (1977). The right of access to the courts requires prison officials to ensure that inmates have access to the courts that is "adequate, effective and meaningful." Id. at 822. To ensure the meaningful exercise of this right, prison officials are under an affirmative obligation to provide inmates with access to an adequate law library, Walker v. Mintzes, 771 F.2d 920, 931 (6th Cir. 1985), or some alternative form of legal assistance, Procunier v. Martinez, 416 U.S. 396, 419 (1974)(overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989)). Meaningful access varies with the circumstances, and prison officials are accorded discretion in determining how that right is to be administered. Bounds, 430 U.S. at 830-31. However, it is not enough for plaintiff simply to claim that he was denied access to the courts, or that he did not have access to an adequate law library or to some alternate form of legal assistance. To state a claim on which relief may be granted, plaintiff must show that a defendant's conduct in

some way prejudiced the filing or prosecution of a legal matter. <u>Walker</u>, 771 F.2d at 932; <u>Kensu v. Haigh</u>, 87 F.3d 172, 175 (6th Cir. 1996).

In this case, the Plaintiff alleges that Defendant Robert Arnold, Rutherford County Sheriff, and the Murfreesboro Jail staff do not provide inmates with "a fully equipped legal library." (Doc. No. 1 at p. 160). The Plaintiff acknowledges that he has access to the legal research resource Lexis as well as the ability to request other legal materials, although the Plaintiff believes that he has to wait too long to receive those materials after making his request. (<u>Id.</u>)

The Plaintiff has not alleged that he has been prejudiced in filing this instant lawsuit or has suffered any litigation related detriment to either this case or another case. Indeed, the Plaintiff has submitted a lengthy complaint with many pages of attachments. Thus, because the Plaintiff has not shown that he sustained an actual injury in his efforts to litigate, he fails to state a claim for denial of his right of access to the courts. The Plaintiff's denial of access to courts claims as to all Defendants therefore will be dismissed.

**D.    Malicious prosecution claims**

The complaint alleges federal malicious prosecution claims against Defendants Jennings Jones and Shawn Puckett, both Rutherford County prosecutors. "The Sixth Circuit 'recognize[s] a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment,' which 'encompasses wrongful investigation, prosecution, conviction, and incarceration.'" <u>Sykes v. Anderson</u>, 625 F.3d 294, 308 (6th Cir. 2010) (quoting <u>Barnes v. Wright</u>, 449 F.3d 709, 715–16 (6th Cir. 2006)). "The 'tort of malicious prosecution' is 'entirely distinct' from that of false arrest, as the malicious-prosecution tort 'remedies detention accompanied not by absence of legal process, but by wrongful institution of legal process.'" <u>Id.</u> (quoting <u>Wallace</u>, 549 U.S. at 390). To succeed on

8

such a claim, the plaintiff must show that (1) a criminal prosecution was initiated against the plaintiff, and the defendant made, influenced, or participated in the decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty; and *(*4) the criminal proceeding has been resolved in the plaintiff's favor. Id.; see also Heck v. Humphrey, 512 U.S. 477, 486–87, 114 S. Ct. 2364, 129 L.Ed.2d 383 (1994) (holding that, to recover damages under § 1983 for an allegedly unconstitutional conviction, "or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," the plaintiff must prove that the conviction or sentence has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus).

The Plaintiff cannot sue Defendants Jones and Puckett for money damages arising from the institution of criminal proceedings against him. Prosecutors are absolutely immune from suit for actions taken in initiating and pursuing criminal prosecutions because that conduct is "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430–31, 96 S. Ct. 984, 47 L.Ed.2d 128 (1976). "A prosecutor's decision to initiate a prosecution, including the decision to file a criminal complaint or seek an arrest warrant, is protected by absolute immunity." Howell v. Sanders, 668 F.3d 344, 351 (6th Cir. 2012). Therefore, the Plaintiff's claims for money damages against Defendants Jones and Puckett for these activities are barred by absolute prosecutorial immunity. Id. at 427–28; Burns v. Reed, 500 U.S. 478, 490–492, 111 S. Ct. 1934, 114 L.Ed.2d 547 (1991); Grant v. Hollenbach, 870 F.2d 1135, 1137 (6th Cir. 1989); Jones v. Shankland, 800 F.2d 77, 80 (6th Cir. 1986). Furthermore, the complaint does not allege that Plaintiff's conviction or sentence has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus. Thus, Plaintiff's malicious prosecution claims

against Defendants Puckett and Jones will be dismissed.

**E.   Claims against court-appointed public defenders**

With regard to Plaintiff's claims against his court-appointed lawyers (Ray White and Billie Zimmerman), courts have uniformly held that an attorney, whether appointed or retained and whether in state or federal court, is not acting under color of law for purposes of § 1983. <u>Mills v. Davis</u>, 2014 WL 2893215, at *4 (E.D. Tenn. June 24, 2014)(citations omitted).  Thus, even if White and Zimmerman were appointed by the State, they acted as the State's adversaries and were not acting on the State's behalf.  Thus, with regard to the representation of the Plaintiff, neither attorney was transformed into a state official acting under color of state law for purposes of § 1983, and Plaintiff's § 1983 claims against White and Zimmerman must be dismissed.

**F.      Civil conspiracy claims**

According to the complaint, the Plaintiff's arrest as detailed above was part of a larger, more far-reaching conspiracy between a number of Defendants, including Aneta Flaggs, Billie Zimmerman, Ray White, officers of the Murfreesboro Police Department, judges, and prosecutors "to keep Singer held in captivity . . . ."  (Doc. No. 1 at p. 37).   The Sixth Circuit has defined a civil conspiracy under 42 U.S.C § 1983 as follows:

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action.  Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy.  Each conspirator need not know all of the details of the illegal plan or all of the participants involved.  All that must be shown is that there is a single plan, that the alleged co-conspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

<u>Hooks v. Hooks</u>, 771 F.2d 935, 943-44 (6th Cir. 1985).  Conspiracy claims must be pled with a

degree of specificity.  <u>Hamilton v. City of Romulus</u>, 409 Fed. Appx. 826, 835-36 (6th Cir. 2010).

Vague and conclusory allegations unsupported by material facts are insufficient, although circumstantial evidence of an agreement among all conspirators may provide adequate proof.  <u>Id.</u>

Having reviewed the complaint and supporting material, the Court finds that the Plaintiff's allegations of a civil conspiracy between the Defendants do not survive the PLRA's screening.  28 U.S.C. § 1915A.  As to the existence of a conspiracy to incarcerate the Plaintiff, the complaint's allegations are rambling and conclusory.  For example, the complaint alleges: "Defendants have entered into their common scheme or plan which amount to 'conspiracy' to deprive Singer of his life, liberty and property in violation of Criminal Code Section 20, 18 U.S.C.A. Section 52 penalizing willful deprivation under color of any law, statute, ordinance, regulation or custom of any right, privileges or immunities secured or protected by the Constitution and laws of the United States."  (Doc. No. 1 at p. 139).  The complaint also alleges that the Plaintiff's rights were violated "when all Defendants from a number of different agencies continue to conspire to defraud Plaintiff and the United States of and concerning its governmental functions to be honestly, faithfully, and dutifully represented in the courts of the United States in such matters 'free from corruption, improper influence, dishonesty or fraud.'" (<u>Id.</u> at p. 36).

Moreover, actions such as police officers testifying before a grand jury, which the Plaintiff advances as evidence of the existence of a civil conspiracy to incarcerate him, are actions for which officers enjoy absolute immunity from § 1983 liability.  <u>See Rehberg v. Paulk</u>, 132 S. Ct. 1497, 1506 (2012)(holding that "this rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution.").  Thus, the Plaintiff's

civil conspiracy claims as to all Defendants will be dismissed. The Court will, however, dismiss these claims without prejudice in the event that the Plaintiff is able to more specifically articulate his allegations as to each Defendant purportedly involved in a civil conspiracy to harm the Plaintiff.

## G. Abstention

In the complaint, the plaintiff asks the court to review his state criminal case "and intervene, restraining the states [sic] prosecution of Singer . . . ." (Doc. No. 1 at p. 25). To the extent that the complaint asks the court to intervene in pending state criminal proceedings and investigations against the Plaintiff, the law is well-settled that a federal court should not interfere with pending state court criminal proceedings, absent the threat of "great and immediate" irreparable injury. Younger v. Harris, 401 U.S. 37, 46 (1971). Younger abstention applies where the federal plaintiff seeks injunctive or declaratory judgment relief. Carroll v. City of Mount Clemens, 139 F.3d 1072, 1074 (6th Cir. 1998).

In Younger, the Supreme Court held that, absent extraordinary circumstances, federal equity jurisdiction may not be used to enjoin pending state prosecutions. The Younger abstention doctrine is based on the principle that the states have a special interest in enforcing their own laws in their own courts. Id. at 44. The rule is "designed to permit state courts to try state cases free from interference by federal courts, particularly where the party to the federal case may fully litigate his claim before the state court." Zalman v. Armstrong, 802 F.2d 199, 205 (6th Cir.1986) (internal quotations omitted). Abstention in favor of state court proceedings is proper where there exists: (1) an ongoing state judicial proceeding; (2) an important state interest; and (3) an adequate opportunity in the state judicial proceedings to raise constitutional challenges. Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982); Fieger v. Thomas, 74 F.3d 740,

744 (6th Cir. 1996).

The three factors that support <u>Younger</u> abstention are present in this case. First, one or more state criminal prosecutions of the Plaintiff appear to be underway. (Doc. No. 1 at p. 5). Second, there can be no doubt that state criminal proceedings implicate important state interests. <u>See, e.g.</u>, <u>Cooper v. Parrish</u>, 203 F.3d 937, 954 (6th Cir. 2000). Third, while the complaint expresses the Plaintiff's dissatisfaction with the state court and his suspicions that state judges and other state actors are violating the law somehow, the complaint does not allege that the state court has refused or would refuse to consider the Plaintiff's constitutional claims; thus, presumably the state court proceedings provide an adequate forum in which the Plaintiff can raise any constitutional challenges. If the Plaintiff raises his constitutional challenges in state court and the trial court denies or otherwise fails to consider his constitutional claims, the Plaintiff may exercise his right to an appeal under Tennessee law. The Plaintiff also may oblige himself of state post-conviction proceedings in the event he is convicted of the charged offense(s).

There are exceptions to the <u>Younger</u> doctrine: (1) "the state proceeding is motivated by a desire to harass or is conducted in bad faith," <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592, 611; (2) "the challenged statute is flagrantly and patently violative of express constitutional prohibitions," <u>Moore v. Sims</u>, 442 U.S. 415, 424 (1979)(quoting <u>Huffman</u>, 420 U.S. at 611); or, (3) there is "an extraordinarily pressing need for immediate federal equitable relief." <u>Kugler v. Helfant</u>, 421 U.S. 117, 125 (1975). These exceptions have been interpreted narrowly. <u>Zalman v. Armstrong</u>, 802 F.2d 199, 205 (6th Cir. 1986). In order to overcome the bar of <u>Younger</u> abstention, a plaintiff must do more than set forth mere allegations of bad faith or harassment. <u>See Amanatullah v. Colorado Board of Medical Examiners</u>, 187 F.3d 1160, 1165 (10th Cir.1 999) (citing <u>Phelps v. Hamilton</u>, 122 F.3d

885, 889 (10th Cir.1997)).    The burden on a Plaintiff is high, and the allegations of the instant complaint do not suggest that any exception to the <u>Younger</u> doctrine is warranted in this case at this time.

### H.    Claims against judges

Because the Plaintiff failed to identify in what capacity he has sued Judges Campbell and Braggs, both judges are presumptively sued in their official capacities.  <u>See Wells v. Brown</u>, 891 F.2d 591, 592-93 (6th Cir. 1989).   Claims against the judges in their official capacities are claims against the entity which they represent and are not claims against the individual judges themselves.

Judge Braggs, as a Circuit Court Judge, is an employee of the State of Tennessee.  However, the State of Tennessee is not a "person" subject to suit under 42 U.S.C. § 1983. The Eleventh Amendment to the United States Constitution bars § 1983 claims against a state or any arm of a state government. <u>Will v. Mich. Dep't of State Police</u>, 491 U.S. 58, 64, 109 S. Ct. 2304, 105 L.Ed.2d 45 (1989).   Because the state of Tennessee is immune from suit under § 1983, the Plaintiff's claims against Judge Braggs in his official capacity will be dismissed with prejudice.

Under Tennessee law, Judge Campbell, in her capacity as a General Sessions Court Judge, is an employee of Rutherford County. <u>Tucker v. Tennessee</u>, 2005 WL 1922561, at **1-2 (W.D. Tenn. 2005) (thorough discussion of Tennessee law explaining general session judges are county and not state employees).   The court's discussion of municipality liability with regard to official capacity claims against Rutherford County continues in Section I below.

Although it appears Plaintiff only sued the named judges in their official capacities, even presuming for the sake of discussion Plaintiff is attempting to sue the judges in their individual capacities, the judges are entitled to judicial immunity.  Under the doctrine of judicial immunity, a

14

judge has absolute immunity from suit both from money damages and injunctive relief for his or her judicial acts. Bradley v. Fisher, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646 (1871) (judicial officials are exempt from civil action for judicial acts); see also Butz v. Economou, 438 U.S. 478, 98 S. Ct. 2894, 57 L.Ed.2d 895 (1978), Kipen v. Lawson, 57 Fed. Appx. 691 (6th Cir. 2003). Judicial immunity is an immunity from suit, not just immunity from the assessment of money damages. Mireles, 502 U.S. at 11. Because a plaintiff's allegations of bad faith, malice, or corruption against a judge cannot overcome absolute judicial immunity from suit, a judge is entitled to have a suit accusing him or her of acting in bad faith, maliciously, or corruptly dismissed on the basis of judicial immunity. Mireles, 502 U.S. at 11.

Judicial immunity from suit can be overcome in two situations, neither of which is applicable here. A judge is not immune from liability for non-judicial actions, *i.e.,* actions not taken in the judge's judicial capacity, or for actions, though judicial in nature, which are taken in the complete absence of all jurisdiction. Mireles, 502 U.S. at 11-12; Stump v. Sparkman, 435 U.S. 349, 98 S. Ct. 1099, 55 L.Ed.2d 331 (1978). Although the Plaintiff claims otherwise, it does not appear that either judge acted in "clear absence of all jurisdiction." Id. at 357 (internal punctuation and citation omitted). Neither of these exceptions to judicial immunity is applicable because the alleged acts of both judges in Plaintiff's criminal case were judicial acts taken in the course of judicial capacity and were not committed in the complete absence of all jurisdiction. Therefore, both judges in their individual capacities are absolutely immune from this civil suit.

I. **Claims against Sheriff Robert Arnold and Aneta Flaggs and against Rutherford County, Tennessee**

The complaint alleges that Defendant Rutherford County Sheriff Arnold failed to properly train his subordinate officers "to investigate the commission of any suspected commission of an

offense." (Doc. No. 1 at p. 65).  The complaint makes a number of allegations against Defendant Aneta Flaggs, who appears to be or to have been an internal affairs officer employed by Rutherford County.  For example, the complaint alleges that she "has a duty and responsibility to discipline the above forementioned officers as she attempts to conceal the facts of the dash cam video of the traffic stop[,] the submitted false police report of Aaron Price, along with the altered criminal statute . . . on the face of the indictment . . . ."  (Doc. No. 1 at p. 130).  He alleges that she, like Defendant Arnold, "has acted and continues to act against policy and continues to show negligent disregard to procedures as a government official to investigate the suspected commission of offenses . . . ."  (Id. at p. 70).  He further alleges that her actions on a number of occasions violated the Plaintiff's due process rights.  (Id. at p. 90).

The complaint alleges that both Arnold and Flaggs acted pursuant to "official policies, customs and practices of the Murfreesboro Police Department and the City of Murfreesboro . . . ." (Id. at p. 97).  The complaint identifies these policies and customs as:   "seizing and searching citizens and their property without believing the plaintiff has violated any law in their presence"; "concealing citizens['] complaint forms of citizen with equal privileges [sic] who submit criminal complaints of public officials performing their official duties in public"; "retaliating, humiliating, harassment, discrimination, or other adverse consequences against individuals who exercise their First and Fourteenth Amendment rights to submit criminal complaints of actual criminal statute violations of public officials performing their official duties in public."  (Id. at p. 106).

A suit against Arnold, Flaggs, or Judge Campbell in his or her official capacity is a suit against Rutherford County, Tennessee.  However, while Rutherford County is a suable entity, it is responsible under § 1983 only for its  "own illegal acts. [It is] not vicariously liable under § 1983

for [its] employees' actions." Connick v. Thompson, 563 U.S. 51, 131 S. Ct. 1350, 1359, 179 L.Ed.2d 417 (2011) (internal citations and quotation marks omitted). A municipality may be liable under § 1983 "only if the challenged conduct occurs pursuant to a municipality's 'official policy,' such that the municipality's promulgation or adoption of the policy can be said to have 'cause[d]' one of its employees to violate the plaintiff's constitutional rights." D'Ambrosio v. Marino, 747 F.3d 378, 386 (6th Cir. 2014)(quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978)).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick, 131 S. Ct. at 1359. Thus, to state a municipal liability claim, a plaintiff must adequately allege "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." Burgess v. Fischer, 735 F.3d 462, 478 (6th Cir. 2013).

The inadequacy of police training only serves as a basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. Slusher v. Carson, 540 F.3d 449, 457 (6th Cir. 2008). To establish deliberate indifference, the plaintiff may show prior instances of unconstitutional conduct demonstrating that the governmental entity has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury. Id.; see also Gregory v. City of Louisville, 444 F.3d 725, 752-53 (6th Cir. 2006). In the alternative, where the constitutional violation was not alleged to be part of a pattern of past misconduct, a supervisory official or a municipality may be

held liable only where there is essentially a complete failure to train the police force or training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result. Hays v. Jefferson Cnty., Ky., 668 F.2d 869, 874 (6th Cir.1982).

At this early stage of the proceedings, the complaint's allegations, which ultimately may prove to be untrue, warrant further development. Read generously, the *pro se* complaint alleges that Sheriff Arnold's inadequate training or supervision of officers under his command caused or contributed to the alleged violation of the Plaintiff's civil rights and/or that policies, customs, and practices exist within Rutherford County that caused or contributed to the alleged violations of the Plaintiff's civil rights– practices and policies that Flaggs also enforced. Consequently, the court finds that the complaint states a colorable § 1983 claim against Rutherford County in this regard for purposes of further developing the record. The Court takes these kinds of allegations seriously, but Plaintiff must be able to substantiate his claims in order for case to proceed.

### J.      Claims against Officer Applegate

The complaint alleges that Defendant police officer Shawn Applegate failed to respond or otherwise take appropriate action after receiving complaints and letters from the Plaintiff pertaining to the allegations he raises in this lawsuit. (Doc. No. 1 at p. 156). Although the Plaintiff may feel that his grievances or complaints were not taken seriously or handled properly, a Plaintiff cannot premise a § 1983 claim on allegations that the an institution's grievance procedure was inadequate and/or unresponsive because there is no inherent constitutional right to an effective jail grievance procedure in the first place. See Hewitt v. Helms, 459 U.S. 460, 467 (1983)(overruled in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995)); Antonelli v. Sheahan, 81 F.3d 1422, 1430

(7th Cir. 1996); <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994); <u>Flick v. Alba</u>, 932 F.2d 728, 729 (8th Cir. 1991). Since a prisoner does not have a constitutional right to an effective or responsive grievance procedure, the Plaintiff's claims based on any Defendant's failure to respond to Plaintiff's grievances do not state a claim upon which relief can be granted, and those claims will be dismissed.

**K.** **<u>Heck</u> claims**

Some of the Plaintiff's claims sound in *habeas corpus* and are not appropriately brought in a § 1983 action. The law is well established that "habeas corpus is the exclusive remedy for a state prisoner who challenges **the fact or duration of his confinement** . . . even though such a claim may come within the literal terms of § 1983." <u>Heck v. Humphrey</u>, 512 U.S. 477, 481 (1994)(citing <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 488-90 (1973))(emphasis added). A § 1983 claim challenging confinement must be dismissed even where a plaintiff seeks only injunctive or monetary relief. <u>Heck</u>, 512 U.S. at 489-90 (claim for damages is not cognizable); <u>Preiser</u>, 411 U.S. at 488-90 (claim for injunctive relief is only cognizable under 28 U.S.C. § 2254). Additionally, a state prisoner does not state a cognizable claim under § 1983 where a ruling on his claim would imply the invalidity of his conviction and/or confinement, unless and until the conviction has been favorably terminated, *i.e.*, reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of *habeas corpus*. <u>Heck</u>, 512 U .S. at 486-87; <u>Ruff v. Runyon</u>, 258 F.3d 498, 502 (6th Cir. 2001). More recently, the United States Supreme Court extended <u>Heck</u> to bar § 1983 actions that do not directly challenge confinement, such as here, but instead challenge the procedures that imply unlawful confinement. <u>Edwards v. Balisok</u>, 520 U.S. 641, 648 (1997).

Under <u>Heck</u>, the court cannot grant the relief requested (release from custody) by the

Plaintiff in his complaint. The Plaintiff's claims concerning the validity of his continued confinement or his complaints against the quality of his court-appointed lawyer's representation would be more appropriately brought in a separate petition for writ of *habeas corpus*, not in a civil rights complaint. Those claims will be dismissed <u>without prejudice</u>, should the Plaintiff wish to pursue them via the appropriate legal route.

  **L.**  **Claims against unidentified grand jurors and jury foreperson**

  The Plaintiff names the twelve unidentified grand jurors and the jury foreperson, Karen Hudson, as Defendants to this action. "[J]urors acting within the scope of their duties" enjoy absolute immunity from suit. <u>Van de Kamp v. Goldstein</u>, 555 U.S. 335, 341 (2009). Therefore, the Plaintiff's claims against the twelve grand jurors and jury foreperson Hudson must be dismissed for failure to state claims upon which relief can be granted.

**V.**  **Conclusion**

  As set forth above, the court finds that all claims are dismissed with prejudice except as follows: Plaintiff's false arrest and false imprisonment claims against Defendants Price, Gibbs, and Gorham in their individual capacities; Plaintiff's excessive force claims against Defendant Price in his individual capacity; and Plaintiff's official capacity claims against Defendants Robert Arnold, Aneta Flaggs, and Rutherford County, Tennessee as described herein. These claims survive the required PLRA screening and shall proceed for further development of the record.

  This dismissal will be without prejudice to the Plaintiff's ability to pursue any remedies available to him by way of a petition for writ of *habeas corpus*.

An appropriate order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE